UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DENISE R. CRUZ DAVIS,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.
_____/

No. C 11-1819 PJH

**ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT**

    The Commissioner's motion to alter and/or amend judgment is currently before the court.

    On July 23, 2012, the court granted in part and denied in part the parties' respective cross-motions for summary judgment. The court granted the Commissioner's motion and denied plaintiff Denise Cruz Davis' ("Davis") motion with respect to four of the five issues raised by the motions (including one which contained three sub-issues). It denied the Commissioner's motion and granted Davis' motion on one issue, and remanded the matter for further proceedings before the administrative law judge ("ALJ") as to that issue only. That issue was whether the ALJ erred in using "the Grids" at step five of his analysis to determine that there were jobs that Davis could perform when he should have consulted a vocational examiner ("VE").

    In its order, the court explained the function and purpose of the Grids and noted the legal standards regarding when their use was appropriate. *See* July 23, 2012 Order at 29-30. The court noted that the Ninth Circuit has held that where a claimant *may* have a non-

exertional limitation, an ALJ's exclusive reliance on the Grids is inappropriate. *See Bruton v. Massanari*, 268 F.3d 824, 827-28 (9th Cir. 2001). The court then determined that the ALJ erred in relying exclusively on the Grids in Davis' case, concluding as follows:

> Here, Davis is correct that the ALJ did not make specific findings regarding her non-exertional limitations. However, contrary to the Commissioner's position, this does not mean that he found that Davis had none. To the contrary, obesity and fibromyalgia in and of themselves constitute non-exertional impairments, and in this case, the ALJ found that they were "severe" or significant. *See Wilson v. Commissioner of Social Sec.*, 2008 WL 5268548 at *2 (9th Cir. 2008) (noting that "[b]ecause the limitations caused by the pain of fibromyalgia and the fatigue of [chronic fatigue syndrome] are non-exertional limitations, vocational expert testimony was required"); *Lucy v. Chater*, 113 F.3d 905 (8th Cir. 1997) (obesity is a nonexertional impairment). Moreover, the mere possibility, rather than certainty, that Davis suffers from a non-exertional limitation, is enough to overcome the interest in judicial efficiency, and to mandate VE testimony on the topic. *Bruton*, 268 F.3d at 828. Notably, the ALJ had a VE at the hearing, but chose to apply the Grids, rather than availing himself of the VE's testimony. In this case, the Grids did not "completely and accurately" represent Davis' limitations, as required by *Tackett* for proper Grids use. 180 F.3d at 1101. Because Davis' alleged non-exertional impairments could potentially interfere with her ability to perform the full range of sedentary work, the ALJ was required to call upon the VE.

Order at 30.

The Commissioner argues that he is entitled to relief under Federal Rule of Civil Procedure 59(e) because the court committed "manifest errors of law or fact," when it concluded that the ALJ erred in relying on the Grids. In his prior cross-motion for summary judgment, the Commissioner argued summarily that Davis suffered only from exertional limitations, that she did not suffer from non-exertional limitations, and therefore, that the ALJ was required to consult the Grids. *See Lounsburry v. Barnhart*, 468 F.3d 1115, 1115 (9th Cir. 2006). In his current motion to alter or amend the judgment, the Commissioner now argues that the fact that Davis may have suffered from non-exertional impairments at step two nevertheless did not require VE testimony, and relies for the first time on the Ninth Circuit's decision in *Hoopai v. Astrue*, 499 F.3d 1071, 1075-76 (9th Cir. 2007). The Commissioner further argues that the Ninth Circuit's decision in *Bruton*, on which the court relied, is distinguishable from Davis' case because there was medical evidence in *Bruton* that supported the existence of non-exertional limitations. The Commissioner then

suggests that in order to reverse the ALJ on the step five issue, the court was additionally required to hold that the ALJ erred in assessing Davis' residual functional capacity ("RFC") for sedentary work.

In opposition, Davis notes that where a claimant suffers from *only* exertional limitations, it is correct that the ALJ is required to consult the Grids. *See Lounsburry*, 468 F.3d at 1115. However, she notes that the ALJ did not make a specific finding at step five that was the case here. Moreover, she further notes that at step two, the ALJ found her fibromyalgia and obesity to be severe, and that these are non-exertional impairments. Accordingly, Davis argues that the ALJ was required to consult a VE at step five. She contends that this case is distinguishable from the *Hoopai* case relied on by the Commissioner because here, the ALJ actually reduced her RFC from light work to sedentary work based on her obesity and fibromyalgia.

In reply, the Commissioner reiterates that if the ALJ's RFC finding was correct, then it was appropriate for him to rely on the Grids.

At the outset, the court notes that the Ninth Circuit's decision in *Hoopai* suggests a more restrictive standard regarding the use of VE testimony in cases involving non-exertional impairments than that previously set forth by the Ninth Circuit in *Bruton*. As noted in the July 23, 2012 order, in *Bruton*, the Ninth Circuit, suggested that the possibility that a claimant suffers from a non-exertional impairment was sufficient to preclude reliance on the Grids and to mandate VE testimony. 268 F.3d at 827-28. In *Bruton*, a doctor's medical report stated that the claimant was "prophylactically precluded" from prolonged work at or above the shoulder level. *Id.* at 828. The doctor's medical report suggested that the claimant's shoulder impairments may have amounted to a non-exertional limitation and, "[b]ecause Bruton *may* have that impairment," the court concluded that the Commissioner could not appropriately rely on the Grids, and should, instead, rely on the testimony of a VE. *Id.* (emphasis added).

However, without overruling *Bruton*, in *Hoopai*, the Ninth Circuit subsequently

suggested a more restrictive standard regarding the requirement for VE testimony in the case of non-exertional impairments, concluding that

> satisfaction of the step-two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert. Instead, an ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case.

499 F.3d at 1075. It held that at step five, a vocational expert's testimony is only required when a non-exertional limitation is sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitation. *Id.*

Given that *Hoopai* did not discuss, let alone expressly overrule *Bruton*, the questions appear to be: (1) which of the seemingly disparate standards applies; and (2) if the court applies *Hoopai* instead of *Bruton*, whether Davis remains entitled to relief at step five under *Hoopai*'s more restrictive standard.

Here, the court need not resolve any conflict in the standards set forth by the Ninth Circuit in *Hoopai* and *Bruton* because it concludes that Davis' non-exertional limitations were indeed sufficiently severe to limit the range of work permitted by her exertional limitations, such that even under *Hoopai*, the ALJ was required to consult a VE. *See id.* As Davis points out, and as noted in this court's July 23, 2012 order, the ALJ in this case indeed modified downward proffered RFC assessments from an examining doctor, Dr. Madani, along with at least two other state medical consultants, to account for Davis' non-exertional limitations, noting that the "assessments do not afford adequate consideration to the claimant's subjective reports and obesity." A.T. 32. Specifically, the ALJ rejected an RFC assessment for "light work," and instead found that Davis could perform at least "sedentary work" given her obesity and subjective reports. *Id.*

Accordingly, for step five purposes and for determining whether VE testimony was required, Davis' non-exertional limitations were sufficiently severe to limit the range of work permitted by her exertional limitations. This case is therefore factually distinguishable from

4

*Hoopai*, in which the claimant had symptoms of depression, but the functional limitations of the claimant's depression on his activities of daily living and maintaining social functioning were mild, and the limitations on his ability to maintain concentration, persistence and pace were moderate. *Id.* at 1077 (holding that mild or moderate depression is not necessarily a severe non-exertional limitation that significantly limits a claimant's ability to do work beyond her exertional limitation).

The court finds no reason to revisit its decision regarding the ALJ's RFC assessment, and further concludes that it is not required to find error with the ALJ's RFC determination in order to conclude that the ALJ erred at step five.

For the reasons set forth above, the court DENIES the Commissioner's motion to alter or amend the judgment. The court concludes that the ALJ erred in relying on the Grids and by failing to call a VE, and remands the case for further proceedings consistent with the directions set forth in its July 23, 2012 order.

**IT IS SO ORDERED.**

Dated: September 24, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge

5